**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

In re:

SEARCH WARRANT FOR FOUR
CONTIGUOUS PARCELS OF REAL            CIVIL CASE NO. 06-x-50457
PROPERTY IN MILFORD, MICHIGAN -       HON. MARIANNE O. BATTANI
MILFORD TOWNSHIP, MICHIGAN.


_____/


**OPINION AND ORDER DENYING THE DETROIT FREE PRESS'S**
**EMERGENCY MOTION TO INTERVENE AND TO OPEN SEALED MATTER**

**I.      INTRODUCTION**

Before the Court is the Detroit Free Press's Emergency Motion to Intervene and to Open

Sealed Matter (Doc. #4).  The Detroit Fress Press seeks an order to unseal the search warrant and

supporting affidavit that authorized the search of a horse farm in Milford, Michigan, previously

owned by former Teamster official, and person of interest, Rolland McMaster.  The government

filed a response opposing the unsealing.  In addition to the pleadings, the Court has reviewed the

Hoffex memorandum, a summary of the Hoffa investigation dated January 1976, and conducted

an *in camera* review of the search warrant affidavit.  The Court heard oral argument on June 16,

2006.  At the conclusion of the hearing, the Court took the matter under advisement.  For the

reasons that follow, the Court **DENIES** the motion.

**II      BACKGROUND**

On the afternoon of July 30, 1975, James Riddle Hoffa disappeared from the Machus Red

Fox Restaurant in Bloomfield Township, Michigan.  Mr. Hoffa was purportedly present at the

2:06-mc-50457-MOB   Doc # 15   Filed 06/26/06   Pg 2 of 9   Pg ID 257

restaurant to meet with Anthony Giacalone and Anthony Provenzano in order to "clear  the air"

between himself and Provenzano, a New Jersey Teamster official.

Almost thirty-one years later, on May 16, 2006, Magistrate Judge Donald A. Scheer

approved the application for a search warrant permitting a search for the remains of James R.

Hoffa at the Milford Township horse farm.  At the request of the government, the search warrant

and its supporting affidavit were filed under seal.

On June 2, 2006, the Detroit Free Press moved to intervene[1] and to unseal the pleadings

associated with the search warrant.  It advances two grounds in support of its request.  First, it

argues that in accordance with United States Supreme Court decisions, there is a presumptive

First Amendment right of access to search warrants and related judicial records.  Second,  it

contends that a presumptive common law right of access to judicial records militates against

keeping the documents in question under seal.

## III.    STANDARD OF REVIEW

Whether the public has a First Amendment right of access to search warrants and

supporting affidavits during the pre-indictment stage of a criminal investigation, and whether the

common law provides the public with a right of access to warrant materials are questions of law

to be decided by the Court.  See U.S. v. Miami Univ., 294 F.3d 797 (6th Cir. 2002); Detroit Free

Press v. Ashcroft, 303 F.3d 681 (6th Cir. 2002).

---

[1]It is undisputed that the request to open the sealed affidavit is properly before the Court.
The public and press have standing to seek access to certain pretrial criminal proceedings and
documents under the First Amendment and common law.  See, e.g. Globe Newspaper Co. v.
Super. Ct. for Norfolk County, 457 U.S. 596, 609 n.25 (1982); In re Knoxville News-Sentinel
Co., Inc., 723 F.2d 470 474-75 (6th Cir. 1983).

IV.     ANALYSIS

    A.     **First Amendment Right of Public Access**

The public's longstanding, qualified First Amendment right of access to criminal trials,

Globe Newspaper, 457 U.S. at 606-607, has been applied to access to judicial records.

> Throughout our history, the open courtroom has been a fundamental feature of the
> American judicial system.  Basic principles have emerged to guide judicial
> discretion respecting public access to judicial proceedings.  These principles
> apply as well to the determination of whether to permit access to information
> contained in court documents because court records often provide important,
> sometimes the only, bases or explanations for a court's decision.

Brown & Williamson Tobacco Corp. v. FTC, 710 F.2d 1165, 1177 (6th Cir. 1983).  Notably, the

Supreme Court requires careful scrutiny when access is restricted by the government.

"Where. . .the State attempts to deny the right of access in order to inhibit the disclosure of

sensitive information, it must be shown that the denial is necessitated by a compelling

governmental interest, and is narrowly tailored to serve that interest."  Globe Newspaper, 457

U.S. at 606-607.

Courts engage in a two-prong inquiry in deciding whether a First Amendment right to

public access exists.  "First, the proceeding must be one for which there has been a 'tradition of

accessibility.'  The second consideration is whether the access 'plays a significant positive role

in the functioning of the particular process in question.'"  In re Cincinnati Enquirer, 94 F.3d at

199 (quoting Press-Enter., 478 U.S. at 8, 10)(citations omitted).  The court finds neither prong is

satisfied here.

As for the first prong, the Court must identify not only the information sought but the

context in which the information is sought.  Specifically, the Free Press seeks sealed, sensitive

information contained in a search warrant affidavit in the absence of a criminal proceeding.  A

review of case law demonstrates that warrant proceedings are not part and parcel of any tradition

of accessibility.  As noted by the Ninth Circuit in <u>Times Mirror Co. v. U.S.</u>, 873 F.2d 1210,

1213-1214 (9th Cir. 1989)(footnote omitted):

> We know of no historical tradition of public access to warrant proceedings.
> Indeed, our review of the history of the warrant process in this country indicates
> that the issuance of search warrants has traditionally been carried out in secret.
> Normally a search warrant is issued after an *ex parte* application by the
> government and an *in camera* consideration by a judge or magistrate.  <u>McDonnell
> Douglas Corp.</u>, 855 F.2d at 573.  The practice of secrecy in warrant proceedings
> was recognized by the Supreme Court in <u>Franks v. Delaware</u>, 438 U.S. 154, 57 L.
> Ed. 2d 667, 98 S. Ct. 2674 (1977). . . .

<u>Accord</u> <u>Baltimore Sun Co. v. Goetz</u>, 886 F.2d 60, 64-65 (4th Cir. 1989)("In concert with the

Ninth Circuit, we hold that the press does not have a first amendment right of access to an

affidavit for a search warrant."); <u>U.S. v. Certain Real Property Located in Romulus, Wayne</u>

<u>County, Mich.</u>, 977 F. Supp. 833, 835 (E.D. Mich. 1997) (Gilmore, J.).  "A warrant application

involves no public or adversary proceedings: it is an ex parte request before a magistrate or

judge."  <u>U.S. v. U.S. Dist. Ct.</u>, 407 U.S. 297, 321 (1972).  <u>See also</u> <u>In re Cincinnati Enquirer</u>, 94

F.3d 198, 199 (6th Cir. 1996)(holding that a summary jury trial proceeding is not in the nature of

a court hearing or a jury trial, and thus not open the public.); <u>contra</u> <u>Search Warrant for</u>

<u>Secretarial Area-Gunn</u>, 855 F.2d 569 (8th Cir. 1988).  Inasmuch as no public or adversary

proceeding is involved in a warrant application, the Court cannot find any tradition of

accessibility attaches to search warrant proceedings, or accompanying documents.

Even if the first prong were satisfied, the Court finds that the Free Press fails to satisfy

the second prong of the inquiry, which requires the Court to determine whether public access to

a search warrant affidavit in the pre-indictment stage of investigation "plays a significant

positive role in the functioning of the particular process in question."  <u>Press-Enter.</u>, 478 U.S. at 8.

In defining the "particular process in question," the Court observes at the outset that it cannot be

a judicial process because there is no ongoing judicial proceeding. Nor has the Free Press

challenged the issuance of the search warrant itself. Consequently, the only process in question

is the ongoing criminal investigation into the disappearance of James R. Hoffa. Thus, the

question is whether the public's access to the search warrant affidavit would play a significant,

positive role in the investigative process. The Court finds it would not.

In reaching this conclusion, the Court finds the rationale articulated in Times Mirror

persuasive.

> [S]ecrecy is no less important to the process of investigating crime for the
> purpose of obtaining evidence to present to a grand jury. First, and most
> obviously, if the warrant proceeding itself were open to the public, there would be
> the obvious risk that the subject of the search warrant would learn of its existence
> and destroy evidence of criminal activity before the warrant could be executed.
> Additionally, if the proceeding remained closed but the supporting affidavits were
> made public when the investigation was still ongoing, persons identified as being
> under suspicion of criminal activity might destroy evidence, coordinate their
> stories before testifying, or even flee the jurisdiction.

873 F.2d at 1215. See also Press-Enter., 478 U.S. at 9, Douglas Oil Co. v. Petrol Stops

Northwest, 441 U.S. 211, 218-19 (1979)(noting several distinct interests served by safeguarding

the confidentiality of pre-indictment proceedings, and that the proper functioning of the grand

jury system depends upon secrecy), U.S. v. Procter & Gamble Co., 356 U.S. 677, 681-82 n.6

(1958). These considerations of secrecy are at the heart of the Court's decision. Granting public

access to sensitive information in a sealed affidavit would not play a significant, positive role in

the investigation. To the contrary, it would impede the investigatory process. Moreover, it

would violate the privacy and safety of witnesses and informants. Therefore, the Court

concludes that the Free Press has failed to demonstrate a presumptive First Amendment right of

access to the pleadings associated with the search warrant. The Court therefore directs its

attention to whether a presumptive common law right of access applies in this case.

### B.       Common Law Right of Public Access

It is undisputed that the press and the public have a common law right of access to

judicial documents. The United States Supreme Court stated:

> It is clear that the courts of this country recognize a general right to inspect and
> copy public records and documents, including judicial records and documents. . . .
> American decisions generally do not condition enforcement of this right on a
> proprietary interest in the document or upon a need for it as evidence in a lawsuit.
> The interest necessary to support the issuance of a writ compelling access has
> been found, for example, in the citizen's desire to keep a watchful eye on the
> workings of public agencies, and in a newspaper publisher's intention to publish
> information concerning the operation of government.

Nixon v. Warner Communications, Inc., 435 U.S. 589, 597-98 (1978). Despite the underlying

policy, "trial courts have always been afforded the power to seal their records when interests of

privacy outweigh the public's right to know." In re Knoxville News-Sentinel Co., Inc., 723 F.2d

at 474. "Common law rights provide the press and the public with less access than First

Amendment rights, and the decision to seal or grant access to 'warrant papers is committed to

the sound discretion of the judicial officer who issued the warrant' and reviewed for abuse of

discretion." Media General Operations, Inc. v. Buchanan, 417 F.3d 424, 429 (4th Cir. 2005).

In support of its common law right of access, the Free Press advances several factors

favorable to its claim. It argues that because of the passage of time, the extensive media

coverage of the Hoffa investigation and of those involved, and the remote likelihood of

prosecution, the release of the entire affidavit would have no adverse affect on the investigation.

The Court agrees that each of these factors supports the position of the Free Press.

Nevertheless, the Court finds that the fact that the government has not closed its case on the

6

Hoffa disappearance trumps those favorable factors.  Despite the age of the investigation,

disclosure of certain sensitive information in the affidavit could potentially lead not only to the

destruction of evidence but also to reprisals against witnesses and informants named in the

affidavit.  These are not the only considerations undermining the position of the Free Press.

> Persons who prove to be innocent are frequently the subjects of government
> investigations.  Like a bill of particulars, a search warrant affidavit may supply
> only the barest details of the government's reasons for believing that an individual
> may be engaging in criminal activity.  Nonetheless, the issuance of a
> warrant-even on this minimal information-may indicate to the public that
> government officials have reason to believe that persons named in the search
> warrant have engaged in criminal activity.  Moreover, persons named in the
> warrant papers will have no forum in which to exonerate themselves if the
> warrant materials are made public before indictments are returned.

Times Mirror, 873 F.2d at 1216.  Finally, the privacy rights of those individuals, who are not the

target of the investigation or accused of any wrongdoing, are implicated.

The Court's analysis is not altered by the argument that access to the affidavit would play

a significant positive role in the oversight of government expenditures of taxpayer money.

Specifically, the Free Press maintains that given the expense of the search in question, the press

and the public have the right to know upon what information the search is based to better gauge

the likelihood of finding Hoffa's remains or those responsible for his disappearance.  This

information is needed to assess whether the expenses arising out of the search can be justified.

Although it is within the province of the press and public to raise and consider a

cost/benefit analysis relative to the search, such considerations fall outside the purview of the

judiciary.  The public has been well informed of the general information upon which the search

was predicated.  The public likewise knows the cost of the investigation and that Hoffa's remains

were not discovered.  The issue before the Court is not whether, because of the age of the case,

the search should have been conducted.  Rather, the issue before the Court is whether interests of

privacy outweigh the public's right to know.

In sum, the Court, in its discretion, finds that the interests of privacy do outweigh the

public's right to know.  In this case, the task of balancing is rendered less difficult because the

government has provided a redacted version of the affidavit to the Free Press.  The redacted

affidavit properly protects the identity and privacy of witnesses, informants, as well as the

integrity of the investigation, while still giving public access to the bulk of the affidavit.  The

Court's *in camera* review of the redacted portions of the affidavit revealed the inclusion of

recent source information, as well as information identifying the current living subject(s) of the

investigation, and more importantly, the details of a threat made to a witness.  Consequently, the

government has shown that the need to protect the names of living witnesses, informants, and

suspects, and other information that could jeopardize an ongoing criminal investigation,

outweighs the need of the public to access that information.  Finally, the Court is reluctant to

hold that the mere passage of time grants the public an uncontestable right to the content of the

affidavit.  If the Court were to adopt such a position, it would place itself in the role of advising

the government as to how best to investigate cold cases by setting arbitrary time restrictions on

how long the government could proceed with an investigation in secrecy.  Murder carries no

statute of limitations.  E.g., People v. Ross, 209 N.W. 663 (Mich. 1926).  The government

investigation is ongoing.



V.      **CONCLUSION**

Accordingly, **IT IS HEREBY ORDERED** that the Detroit Free Press's Motion to

Intervene and to Open Sealed Matter is **DENIED.**


 s/Marianne O. Battani
MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE


DATED: June 26, 2006



**CERTIFICATE OF SERVICE**

Copies of this Order were served upon counsel of record on this date by  electronic filing.

s/Bernadette M. Thebolt
DEPUTY CLERK